UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ERROL A. GEORGE,                                            :
                                                            :
              Plaintiff,                                    :
                                                            :       **REPORT AND**
    -against-                                            :       **RECOMMENDATION**
                                                            :
CREDIT CORP SOLUTIONS INC. D/B/A                            :       22 Civ. 5512 (NRM) (VMS)
TASMAN CREDIT,                                              :
                                                            :
              Defendant.                                    :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Errol George ("Plaintiff" or "George") filed this action in New York City Civil Court, Kings County, against Defendant Credit Corp Solutions Inc. D/B/A Tasman Credit ("Defendant" or "CCS") to recover damages for negligence and for violations of New York General Business Law ("NY GBL") § 349 and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. See Compl., ECF No. 1-1, at 1. Defendant removed the case to this Court, alleging that the Court has federal question jurisdiction based on Plaintiff's FDCPA claims. See Not. of Removal, ECF No. 1 at 2. Plaintiff filed a motion to remand for lack of subject matter jurisdiction and requesting attorneys' fees and costs. See ECF Nos. 10-12. Defendant opposed the motion. See ECF No. 13. Plaintiff replied, see ECF No. 14, and he filed a notice of supplemental authority. See ECF No. 16. The District Court referred Plaintiff's motion to this Court for a report and recommendation. For the following reasons, this Court respectfully recommends that the District Court grant Plaintiff's motion to remand and deny Plaintiff's request for attorneys' fees and costs.

## I. Background

Plaintiff alleges that Defendant CCS is a Utah company that collects debts allegedly owed by New York consumers. See Compl., ECF No. 1-1 ¶¶ 5-14. Plaintiff received a letter from Defendant alleging that he owed $621.81 to Defendant. See id. ¶¶ 23-24. Plaintiff sued Defendant in New York City Civil Court, Kings County, for negligence and for violations of NY GBL § 349 and the FDCPA. See id. ¶ 1. In his complaint, Plaintiff alleges that Defendant does not possess competent proof that Plaintiff owes the money sought or that Plaintiff agreed to pay the money to Defendant. See id. ¶¶ 32-38. Plaintiff alleges that Defendant used a third party to mail to Plaintiff a debt collection letter and disseminated Plaintiff's personal and private information to the third party. See id. ¶¶ 39-42. Plaintiff alleges that he "justifiably fears that, absent this Court's intervention, CCS will eventually cause Plaintiff unwarranted economic harm," cause "unwarranted harm to Plaintiff's credit rating" and cause him to be sued. See id. ¶¶ 55-57.

Plaintiff claims that Defendant violated Sections 1692c and 1692f of the FDCPA by

> [c]ommunicating with third parties about Plaintiff and the alleged debt without Plaintiff's authorization, disclosing Plaintiff's personal and private information, including Plaintiff's personal identifying data, to third parties without Plaintiff's authorization, and disclosing Plaintiff's personal and private information for CCS's financial gain.

See id. ¶ 79. Plaintiff claims that Defendant violated sections 1692e and 1692f of the FDCPA by

> [u]sing false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement

creating the debt or permitted by law; and failing to provide accurate and clear information in the collection letter.

See id. ¶ 121. For Defendant's alleged FDCPA violations, Plaintiff seeks statutory damages of up to $1,000.00, plus attorneys' fees and costs under 15 U.S.C. § 1692k. See id. ¶¶ 80, 122. Plaintiff does not seek compensatory or actual damages arising from the alleged FDCPA violations.

Plaintiff asserts two counts of NY GBL violations. In Count I of the Complaint, Plaintiff alleges that Defendant violated the NY GBL by making "unauthorized disclosures to third parties of the personal and private information of New York consumers, including the consumers' personal identifying data." See id. ¶ 64. In Count V of the Complaint, Plaintiff alleges that Defendant violated the NY GBL by

> attempting to collect money from New York consumers without sufficient proof and competent business records establishing that the consumer owes the money sought[;] . . . without sufficient proof of the legitimate right, title, or interest in such money[;] . . . without being in possession of a credit agreement executed by the consumer[; and] . . . without being in possession of any competent proof that the consumer agreed to pay money; and by misrepresenting to New York consumers the amount of money owed and the consumer's obligation to pay such.

See id. ¶ 106. Plaintiff alleges that, as a result of Defendant's alleged NY GBL violations, he "suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees." See id. ¶¶ 67, 110.

Plaintiff asserts two negligence per se claims, alleging that Defendant breached the statutory standards of care imposed by the NY GBL and FDCPA. See id. ¶¶ 86, 89, 128, 131, 139. Plaintiff asserts three negligence claims, alleging that Defendant, inter alia, failed to use reasonable care in handling Plaintiff's personal and private information by sharing the information with third parties; attempted to collect money from Plaintiff without sufficient proof

3

that Plaintiff owed the money sought; and failed to use reasonable care in ensuring its collection letters did not contain misrepresentations. See id. ¶¶ 98-99, 146-47, 154. For each of his negligence claims, Plaintiff alleges that he "suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages." See id. ¶¶ 90, 100, 140, 148, 155.

Defendant removed the case to this Court based on federal question jurisdiction, "because two of Plaintiff's causes of action allege that Defendant violated the FDCPA." See Not. of Removal, ECF No. 1 ¶ 4. Plaintiff moved to remand the case, arguing that this action does not present a case or controversy over which this Court has jurisdiction because Plaintiff did not suffer a concrete injury sufficient to confer standing for purposes of Article III's case or controversy requirement. See Plf. Mem., ECF No. 12 at 3 (citing TransUnion LLC v. Ramirez, 594 U.S. ——, 141 S. Ct. 2190 (2021), and Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 59 (2d Cir. 2021) (following TransUnion)).

## II. Legal Standards

### a. Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts "construe the removal statute narrowly, resolving any doubts against removability." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)). The removing party has the burden of proving that jurisdiction is proper. See Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000); Winter v. Novartis Pharm. Corp., 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014). If subject matter jurisdiction is absent, the district court must

remand the case. See 28 U.S.C. § 1447(c); Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 89, 111 S. Ct. 1700, 1710 (1991). "When a federal court lacks subject matter jurisdiction to adjudicate a removed case, the proper remedy is to remand the case to state court rather than to dismiss the plaintiff's claims." Jaber v. Complete Payment Recovery Servs., Inc., No. 22 Civ. 2689 (HG), 2022 WL 3543500, at *2 (E.D.N.Y. Aug. 18, 2022) (citing Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014)). That is because, in the absence of subject matter jurisdiction, a federal court is "powerless to adjudicate" the removed case. Vossbrinck, 773 F.3d at 427; see 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 711 (2005).

### b. The FDCPA

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices."

5

Benzemann v. Citibank N.A., 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k). "Section 1692c of the FDCPA limits the individuals and entities with which a debt collector may share information in order to collect a debt." Cavazzini v. MRS Assocs., 574 F. Supp. 3d 134, 137 (E.D.N.Y. 2021) (citing 15 U.S.C. § 1692c(b)). Under § 1692e, debt collectors may not use "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under § 1692f, debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692k of the FDCPA authorizes the court to award (1) "any actual damage sustained by such person as a result of such failure," (2) up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA, and (3) attorneys' fees and costs. See 15 U.S.C. § 1692k(a).

    **c. Standing Under The FDCPA**

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); see TransUnion, 141 S. Ct. at 2203. Whether a plaintiff has Article III standing is "the threshold question in every federal case[.]" Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). In assessing standing, a court "must accept as true all material factual allegations in the complaint," but it must not draw inferences favorable to the party asserting jurisdiction. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).

In order to establish standing, the plaintiff must have "suffered an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203 (citing Lujan, 504 U.S. at 560-61 (1992)). Whether an intangible harm is "concrete" depends on "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as

6

providing a basis for a lawsuit in American courts." Id. at 2204 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549 (2016)). In Spokeo, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, 578 U.S. at 341). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing." Dep't of Educ. v. Brown, No. 22-535, 2023 WL 4277209, at *6 (U.S. June 30, 2023) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 496, 129 S. Ct. 1142, 1151 (2009)). "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 578 U.S. at 341.

In TransUnion, the Supreme Court limited Congress's power to create a mechanism for plaintiffs to seek damages for violations of federal statutes in federal court. The Supreme Court highlighted the distinction, for Article III standing purposes, "between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." TransUnion, 141 S. Ct. at 2205. The TransUnion Court held that Congress may not "enact an injury into existence" by a creating a "statutory prohibition or obligation and a cause of action." Id. The TransUnion Court did not "prohibit Congress from creating statutory rights for consumers; it simply [held] that federal courts lack jurisdiction to hear some of these cases." TransUnion, 141 S. Ct. at 2224 n.9 (Thomas, J., dissenting). Thus, TransUnion left state courts "as the sole forum for such cases, with defendants unable to seek removal to federal court." Id. (citing Jacob L. Burnett, The Paradox of Exclusive State-Court Jurisdiction Over Federal Claims, 105 Minn. L. Rev. 1211 (2021)).

7

TransUnion involved a class of 8,185 plaintiffs whose credit files noted that their names potentially matched names in the United States Treasury Department's Office of Foreign Assets Control ("OFAC") database, "a list of 'specially designated nationals' who threaten America's national security" including "terrorists, drug traffickers, [and] other serious criminals." See id., 141 S. Ct. at 2201. Each of the 8,185 plaintiffs had received a letter stating that the plaintiff's "name was considered potential match to names on the OFAC list." See id. at 2201-02. The plaintiffs argued that defendant TransUnion violated the Fair Credit Reporting Act by failing to "comply with statutory obligations (i) to follow reasonable procedures to ensure the accuracy of credit files so that the files would not include OFAC alerts labeling the plaintiffs as potential terrorists; and (ii) to provide a consumer, upon request, with his or her complete credit file, including a summary of rights." Id. at 2207. "[O]nly 1,853 members of the class . . . had their credit reports disseminated by TransUnion to potential creditors." Id. at 2202. The Court held that those 1,853 class members had Article III standing because their injury bore "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation." See id. at 2208 (quoting Spokeo, 578 U.S. at 341). The Court held that the remaining 6,332 class members, whose reports "contained misleading OFAC alerts" but were not disseminated to potential creditors, had not identified a concrete injury. See id. at 2212.

The plaintiffs whose reports were not disseminated to potential creditors argued that they had alleged a concrete injury because TransUnion "'published' the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received." See id. at 2210. In dicta, TransUnion

8

rejected both theories as "unavailing."[1]  See id. at 2210 n.6.  The Court rejected the printing/mailing vendor theory on the grounds that American courts have not traditionally "recognized disclosures to printing vendors as actionable publications."  See id. (citing Mack v. Delta Air Lines, Inc., 639 F. App'x 582, 586 (11th Cir. 2016)).  The Court also rejected intra-company publication as an actionable wrong.  See id.

The TransUnion Court also rejected the plaintiffs' argument that the risk of future harm by future dissemination of the information demonstrates a concrete injury.  The Supreme Court held that, where a plaintiff seeks damages, and not merely injunctive relief, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm."  Id. at 2210-11 (emphasis in original).

Post-TransUnion, for a defendant to remove a case alleging an FDCPA violation on federal question grounds, the plaintiff must have alleged a concrete injury distinct from the statutory FDCPA violation itself.  This pleading must plead at least three concerns: first, that there is causation between the defendant's conduct and the plaintiff's injury; second, that the alleged injury was incurred, not merely anticipated; and third, that the injury alleged under the FDCPA has a close relationship to a harm that American courts have "traditionally" recognized as a basis for a claim in a lawsuit.  See id. at 2203-04, 2211.

The theory that a defendant's disclosure of a plaintiff's personal and private information to a third-party printing or mailing vendor is a justiciable violation in federal court—commonly termed the "mailing vendor theory"—has been rejected by courts based on the reasoning of

---

[1] The Court also noted that the plaintiffs had forfeited the argument by failing to raise it previously.  See TransUnion, 141 S. Ct. at 2210 n.6.

9

TransUnion.  See Jaber, 2022 WL 3543500, at *3 (holding that the mailing vendor theory was "all but foreclosed by the Supreme Court's decision in TransUnion, in which the Court explained that a credit reporting agency's similar disclosure of information to its "'printing vendors'" did not rise to the level of defamation"); In re FDCPA Mailing Vendor Cases, 551 F. Supp. 3d 57, 63 (E.D.N.Y. 2021) (holding that the language in TransUnion, "[w]hile dicta, . . . appears dispositive of the mailing vendor theory").  Courts have looked beyond defamation to other "traditional" American torts in considering mailing vendor claims but have rejected the conclusion that FDCPA mailing vendor injuries are analogous.  For example, one court concluded that disclosure of a debt to a mailing vendor did not track the common law tort of invasion of privacy, which is aimed at the communication of private matters to the public at large, not to a single person or small group of people.  See Cavazzini, 574 F. Supp. 3d at 142 (citing Restatement (Second) of Torts § 652D (1977)).

Alleging that a debt collection mailing confused or misled the plaintiff is also insufficient to confer standing, as "the state of confusion is not itself an injury [for purposes of Article III]." Clarke v. McCabe, Weisburg & Conway, LLC, No. 22 Civ. 3289 (RPK) (PK), 2022 WL 3030347, at *2 (E.D.N.Y. Aug. 1, 2022) (quoting Pennell v. Glob. Tr. Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021)); see Wadsworth v. Kross, Lieberman & Stone, Inc., 12 F.4th 665, 668 (7th Cir. 2021) ("stress," "anxiety" and "uncertainty" insufficient to confer FDCPA standing); Garland v. Orlans, PC, 999 F.3d 432, 440 (6th Cir. 2021) ("bare allegations of confusion and anxiety do not qualify as injuries in fact"); Jaber, 2022 WL 3543500, at *4 (noting that confusion is insufficient to plead an injury for standing purposes); Wolkenfeld v. Portfolio Recovery Assocs., LLC, No. 22 Civ. 1156 (PKC) (CLP), 2022 WL 1124828, at *3 (E.D.N.Y. Apr. 14, 2022) (allegation that debt collection letter "confused and misled" the plaintiff

10

insufficient to demonstrate concrete injury); Faherty v. Rubin & Rothman, LLC, No. 3:21 Civ. 650 (AWT), 2022 WL 1025958, at *4 (D. Conn. Apr. 6, 2022) (declining to find that "informational harm, such as confusion or deception, is a legally cognizable injury under Article III"); Cavazzini, 574 F. Supp. 3d at 144 (noting that confusion is insufficient to support standing) (collecting cases).

In sum, since TransUnion, "[c]ourts in this District faced with removed FDCPA cases based on the [mailing vendor] theory have unanimously followed this holding and remanded those cases to state court." Jaber, 2022 WL 3543500, at *3 (collecting cases); see Devitt v. Portfolio Recovery Assocs., LLC, No. 21 Civ. 5657, 2022 WL 1460278, at *1 (E.D.N.Y. May 9, 2022); Soto v. Fin. Recovery Servs., Inc., No. 21 Civ. 5524, 2022 WL 203657, at *1 (E.D.N.Y. Jan. 21, 2022); Cavazzini, 574 F. Supp. 3d at 141-43.

### III. Discussion

#### a. Standing

Plaintiff alleges only statutory damages arising from his FDCPA claims; he thus lacks Article III standing under TransUnion, leaving this Court without subject matter jurisdiction over the case. Although Plaintiff asserts federal claims over which this Court would have in the past probably found that it had federal question jurisdiction, the Supreme Court's decisions in Spokeo and TransUnion have changed the standing landscape such that removal here is not possible. These cases have rendered New York State court the "sole forum" for this case and have foreclosed removal. See TransUnion, 141 S. Ct. at 2224 n.9 (Thomas, J., dissenting).

Defendant concedes that the Court would not have subject matter jurisdiction over Plaintiff's "mailing vendor" claim, if the Court were to consider that claim in isolation, because "Plaintiff does not allege to have suffered a concrete injury" with respect to that claim. See Def.

11

Opp., ECF No. 13-3 at 8 n.6.  Disclosing a modest debt to a mailing vendor that is effectively an agent of the disclosing entity is not analogous to the traditional tort of defamation because there is no dissemination of derogatory information to a party or parties who were beyond the ambit of control of the disclosing entity or who were in any position to consider or be concerned with the plaintiff's reputation.  This in and of itself is a sufficient basis on which to grant the remand motion.

Nonetheless, Defendant presses several theories in favor of finding standing.  The Court considers them in the interest of completeness, but Defendant fails to meet its burden of proving that jurisdiction is proper.  See Mehlenbacher, 216 F.3d at 296.  Defendant first argues that Plaintiff's FDCPA allegations themselves describe a concrete injury under Article III.  See Def. Opp., ECF No. 13-3 at 6.  Defendant argues that "the types of allegations in the Complaint relating to falsely claiming ownership of a debt and fraudulently attempting to collect such debt are harms, that if true, go beyond a technical statutory violation."  See id.  Defendant is incorrect—that is simply the conduct the statute prohibits, see 15 U.S.C. § 1692e (prohibiting "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt"), and the allegations in and of themselves under the FDCPA claim are not sufficient to allege that Plaintiff suffered a cognizable concrete harm to establish standing.  Defendant relies on cases that pre-date TransUnion in arguing that the allegations of fraudulent debt collection attempts are sufficient to create standing.  See Def. Opp., ECF No. 13-3 at 6 (citing Papetti v. Does 1-25, 691 F. App'x 24, 26 (2d Cir. May 26, 2017) (summary order); Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 300-01 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017); and Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 81 (2d Cir. 2018)).  These cases are no longer controlling or persuasive.

12

Defendant also relies on Lupia v. Medicredit, Inc., 8 F.4th 1184, 1193 (10th Cir. 2021), and Ozuna v. Budget Control Servs., Inc., No. 19 Civ. 2034 (LTB) (NRN), 2022 WL 1619684, at *4 (D. Colo. Mar. 1, 2022), to support its argument that "misrepresentations of ownership of debt and the amount of debt as sufficient to allege the necessary concrete injury." See Def. Opp., ECF No. 13-3 at 7.  First, these out-of-circuit cases are not binding or persuasive.  Second, unlike this case, Lupia and Ozuna involved allegations of harassing conduct, so they are distinguishable.  See Lupia, 8 F.4th at 1193 (debt collection agency calling the plaintiff after receiving a cease-and-desist letter held to be a sufficiently concrete injury); Ozuna, 2022 WL 1619684, at *4 (the plaintiff alleged that the defendant "violated the FDCPA by engaging in conduct to harass her when collecting a debt").  Other courts in this Circuit have rejected the defendants' reliance on Lupia and Ozuna in seeking to remove FDCPA claims lacking similar harassment allegations.  See Mohadeb v. Credit Corp Sols. Inc., No. 22 Civ. 5017 (RPK) (SJB), 2022 WL 17832856, at *3 (E.D.N.Y. Dec. 21, 2022) (distinguishing Ozuna on the grounds that the Ozuna Plaintiff alleged "a tangible injury in the form of increased anxiety and emotional distress" (quoting Ozuna, 2022 WL 1619684, at *3), and Lupia on the grounds that it involved an injury resembling "the harm involved in the common law tort of intrusion upon seclusion"); Faherty v. Rubin & Rothman, LLC, No. 3:21 Civ. 650 (AWT), 2022 WL 1025958, at *4 (D. Conn. Apr. 6, 2022) (noting that the Lupia Plaintiff alleged a "sufficiently concrete injury because it 'poses the same kind of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet'" (quoting Lupia, 8 F.4th at 1191-92)).

Defendant also argues that Plaintiff has alleged a concrete injury by claiming that Defendant "is a 'debt scavenger' that holds 'no legal right, title or interest in [the Debt]'" and by "claim[ing] to have been 'confused, deceived and misled by [Credit Corp] listing two reference

13

numbers in the underlying letter.'" See Def. Opp., ECF No. 13-3 at 7 (quoting Compl., ECF No. 1-1 ¶¶ 27, 38, 49-52).  Any allegation that Plaintiff was simply confused or misled does not allege an injury sufficient to support standing.  See Jaber, 2022 WL 3543500, at *4; Clarke, 2022 WL 3030347, at *2; Wolkenfeld, 2022 WL 1124828, at *3; Faherty, 2022 WL 1025958, at *4; Cavazzini, 574 F. Supp. 3d at 144.

Defendant argues that Plaintiff has alleged a concrete injury because the complaint "repeatedly alleges that Plaintiff 'suffered compensable harm' requesting both actual and punitive damages."  Def. Opp., ECF No. 13-3 at 7.  Plaintiff does not make these conclusory damages claims in the context of his FDCPA claims, for which he only alleges statutory damages.  Even claims for actual and compensatory damages arising under Plaintiff's negligence and NY GBL claims which lack factual allegations sufficient to establish a concrete injury cannot create Article III standing to bring his FDCPA claims.  See Jaber, 2022 WL 3543500, at *3.

Because Plaintiff has not alleged a concrete injury, he lacks Article III standing to sue in federal court, and this Court lacks subject matter jurisdiction.  This Court is therefore "powerless to adjudicate" the claims, see Vossbrinck, 773 F.3d at 427, and it must remand the case, see 28 U.S.C. § 1447(c).  This Court therefore respectfully recommends that the District Court grant the remand motion.

### b. Attorneys' Fees And Costs

This Court respectfully recommends that the District Court deny Plaintiff's request for attorneys' fees and costs.

The jurisdictional lacunae recently created by TransUnion and its progeny has reasonably confounded those removing defendants who expected that a federal court would be the proper

place for the adjudication of cases about federal law. The developing line of post-TransUnion cases about the scope of the Court's jurisdiction over alleged federal statutory violations is creating a sea change in federal court jurisdiction, although the Supreme Court predicted otherwise. TransUnion elevated the Spokeo observation that, in determining whether an intangible harm constitutes injury in fact, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," see Spokeo, 578 U.S. at 340-41, to a requirement that a plaintiff allege a harm "traditionally recognized as providing a basis for a lawsuit in American courts," see TransUnion, 141 S. Ct. at 2204, 2206, 2213. This TransUnion analysis, if applied too broadly, could break down the careful balance of power between Congress and the courts in determining what is a harm that may be protected by a private right of action. In addition, leaving state courts to enforce certain federal statutes presents the likelihood of confusion over the enforceability of such federal laws and the removability of cases. See TransUnion, 141 S. Ct. at 2224 n.9 (Thomas, J., dissenting); Burnett, supra, at 1268. Defendant reasonably sought to explore the comparative analysis of statutory and "traditional" torts now required when reviewing standing under claims similar to those raised in this case. Defendant's efforts to test the limitations of TransUnion was reasonable given this changing legal framework.

In light of this complex analysis, the Court does not find that Defendant "lacked an objectively reasonable basis for seeking removal." See Martin, 546 U.S. at 141. Given that the complaint asserts claims under a federal statute, and that the courts' interpretation of standing doctrine post-TransUnion is still evolving, Defendant's attempted removal was reasonable, and attorneys' fees and costs should not be awarded. See Jaber, 2022 WL 3543500, at *4 (declining to award fees after remanding FDCPA case for lack of standing and noting that TransUnion's

15

"impact on the standing jurisprudence in this District and the Second Circuit is still evolving"); Clark v. Bay Park Ctr. for Nursing & Rehab., No. 19 Civ. 506 (VSB), 2019 WL 3852430, at *3 (S.D.N.Y. Aug. 16, 2019) (declining to "find no objectively reasonable basis" for the defendants' removal where the plaintiff alleged that the defendants violated federal laws).

## IV. Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court grant Plaintiff's motion to remand and deny Plaintiff's request for attorneys' fees and costs.

## V. Objections

This report and recommendation will be filed electronically. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
August 24, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

16